**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIMANI O. HODGES, | ) | CASE NO. 4:22-CV-00119-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN HAROLD MAY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  Introduction

Petitioner, Kimani O. Hodges, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hodges is an Ohio prisoner who is currently serving a life sentence without the possibility of parole for aggravated murder and having a weapon while under disability. Hodges asserts eleven grounds for relief. (ECF No. 1). Respondent, Warden Harold May, filed a return of writ on June 6, 2022. (ECF No. 12). Hodges, through counsel, filed a traverse on October 19, 2022. (ECF No. 20). On November 3, 2022, Respondent filed a reply to the traverse. (ECF No. 21).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Hodges's petition and other case-dispositive motions. Because Hodges has presented only procedurally defaulted or meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.  Facts and Procedural History

### A.  Background

The Ohio Court of Appeals for the Seventh Appellate District set forth the following facts[1]

and procedural history on Hodges's direct appeal:

{¶4} On February 17, 2016, the body of Jason Fonseca, age nineteen, was found at the bottom of the driveway of his mother's residence at 176 Ayers Street on the east side of Youngstown. Fonseca had been shot nine times.

{¶5} Later that day, Appellant was arrested and charged with aggravated murder in Youngstown Municipal Court. A video initial appearance was held on February 19, 2016. The matter was set for a preliminary hearing on February 26, 2016.

{¶6} On February 25, 2016, Appellant was indicted by the Mahoning County Grand Jury for aggravated murder, and the state dismissed the charge pending in the municipal court. That same day, Angel Bell, who was involved in amorous relationships with both men prior to Fonseca's death, was also indicted for aggravated murder, as well as one count of obstructing justice.

{¶7} The first trial began on January 3, 2017. Fonseca's lifelong friend, Noel Rios, was the only eyewitness to the crime offered by the state. After Appellant's counsel underscored a series of inconsistencies between Rios' direct testimony and his initial police interview, Rios, who was in federal custody at the time, abruptly refused to continue answering questions on cross-examination.

{¶8} After the trial court granted Appellant's motion to strike Rios' testimony in its entirety, the state informed the trial court that it had reached an agreement with Bell. Although Bell had previously maintained that she was not present when the fatal shooting occurred, Bell agreed to provide a proffer to the state that day and to testify against Appellant, in exchange for the dismissal of the charges against her with prejudice.

{¶9} Appellant's counsel moved for a mistrial based on his lack of awareness of the content of Bell's proffer and the potential testimony she would provide at trial. Without objection from the state, the trial court granted the mistrial on January 9, 2017.

{¶10} On January 23, 2017, with leave of court, Appellant filed a motion to dismiss the charges against him on double jeopardy grounds. He argued that the mistrial was the result of prosecutorial misconduct. The trial court overruled the motion on February 3, 2017. On January 30, 2018, we agreed that the prohibition against double jeopardy did not bar Appellant's retrial. *State v. Hodges*, 7th Dist. Mahoning No. 17 MA 0025, 2018-Ohio-447, 105 N.E.3d 543.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

{¶11} The second trial began on June 4, 2018. Both Bell and Rios testified on behalf of the state, however Bell's testimony was riddled with "I don't know"s and "I don't remember"s. Bell testified that she and Fonseca had been romantically involved since 2014. Although problems had developed with their relationship in 2015, Bell declined to characterize the relationship as "on again/off again," but, rather "[always on] for the most part." (Trial Tr., p. 247-248.) At some point, Bell began a romantic relationship with Appellant.

{¶12} Fonseca and Bell purchased a used automobile in January of 2016. According to Fonseca's mother, Fonseca paid for the automobile but did not have a driver's license. Because Bell was involved in an accident two days after Fonseca purchased the automobile, Fonseca hid the car in order to prevent Bell from driving it. Fonseca was not aware at that time that he possessed the only set of keys.

{¶13} Bell and Fonseca broke up at some point thereafter and Fonseca refused to give the keys to the automobile to Bell. In the week leading up to Fonseca's fatal shooting, Bell made a number of failed attempts to retrieve the keys. Fonseca's mother testified that Bell and Appellant stopped at her home on Ayers Street, where Fonseca was residing after the break-up, two days before Fonseca's death, but, per her son's instructions, she did not answer the door.

{¶14} The prior calculation and design element of the aggravated murder charge was established at trial through a series of messages posted to various social media accounts in the five days leading up to Fonseca's death. Copies of the social media messages were not admitted at trial, however, they were made a part of the record through Bell's testimony. Bell, who did not have a phone, communicated with both Fonseca and Appellant via Twitter on a Kindle.

{¶15} Bell testified that, at 9:10 a.m. on the day before Fonseca was murdered, he posted the message "I love you so much" in the Twitter chain with Bell that began on February 13, 2016. (*Id.* at 278.) At 9:16 a.m., Appellant posted, "Love yoself bitch ass nigga she mine now quick in box in n kikn her." (*Id.* at 278, 282.) Bell explained that Appellant appeared to mean "quit" not "quick" and that "in box in nkikn her" was a reference to Bell's Kik Messenger app.

{¶16} In a 3-second video posted on Bell's Kik Messenger video account, which was admitted into evidence, a man whose face is not visible wields a handgun and states, "We got them dicks [30 bullet clips]. I'll come to yo mama house, fuck boy, (unintelligible)." The man is wearing a large round-faced watch. Bell conceded that Appellant had used her Kik account around the time when the video was posted.

{¶17} Bell testified that she did not recognize the man in the Kik video. The state offered a photograph of Appellant taken on February 18, 2016 at 1:12 a.m. into evidence at the trial. Appellant was wearing a large round-faced watch in the photograph. Bell claimed that she could not determine from the picture whether the man in the video was wearing the same watch. However, Detective Sergeant Rick

3

Spottleson later testified that the watch in the photograph was the same watch worn by the man in the video.

{¶18} Finally, Bell testified that, at 10:51 a.m. on the day that Fonseca was fatally shot, Appellant posted to his own Facebook account, "Niggas want to fight? I'm like naww we toot pipes [shoot guns] you a be fightin for your life." (*Id.* at 274.)

{¶19} According to Bell's testimony, she was in the front passenger seat of Appellant's automobile on February 17, 2016. Appellant, Bell, and another man, who she could not identify, were returning home from visiting friends when Appellant drove down Ayers Street. Appellant recognized the occupant of a vehicle parked near the residence. He stopped his automobile and exited to talk to the occupant. Appellant also conversed with another man who was standing on the street. The man on the street gave Appellant a cigarette.

{¶20} Bell testified that the confrontation between Appellant and Fonseca took place behind the automobile in which she was seated. According to her testimony, "[Fonseca] ran outside and, kind of, I don't know, I guess charged [Appellant]." (*Id.* at 262.) Then Bell heard gunshots and she saw Fonseca fall to the curb. (*Id.* at 263, 269.) Appellant returned to his automobile and then drove to a residence on the south side of Youngstown. Bell testified that she could not recall whether Appellant said anything to her or the other passenger about the shooting while driving across town. (*Id.* at 265.)

{¶21} After he was arrested, Appellant conversed with Bell on the telephone. Bell testified that Appellant "wanted to delete his Facebook." (*Id.* at 272.) Although Bell claimed that she could not recall whether Appellant also asked her to delete his messages on her Twitter account, Bell deleted both the Facebook and Twitter messages.

{¶22} Bell authenticated a letter she received from Appellant while he was incarcerated pending trial, which she read aloud at the trial:

> I'm so so so so sorry. I didn't listen to you when you said – I don't know what that says – forward. I'm sorry. Again, I didn't think shit through and I put your life, as well as my nephew and my brother, in jeopardy. I was just so thirsty to get some money, didn't care where I was or what might or could have happened. Or maybe it wasn't – something – much as to me not caring but just being arrogant and not thinking about what if."

Bell testified that she did not know to what he was referring in the letter. (*Id.* at 292.)

{¶23} Raymond Ortiz, Fonseca's cousin, did not witness the shooting, but was in the residence on Ayers with Fonseca that day. Minutes before the shooting Fonseca tossed his "hoodie" to Ortiz and told him to get dressed and follow Fonseca outside

because Appellant was en route to the residence. Fonseca exited the residence, but Ortiz stopped to put on his shoes. As Ortiz approached the door, he heard gunshots. Ortiz testified that his friend, Javaughn used Ortiz's mobile telephone to log into the Kik Messenger app and found the video.

{¶24} Rios testified that he was standing on the sidewalk smoking a cigarette when an automobile stopped in the street. Appellant, who acted as if he knew Rios, stepped out of the automobile and began conversing with him. Rios gave Appellant a cigarette, even though, at the time, he did not recognize him. Rios initially thought that there was another man in the car, because the other occupant was wearing a "hoodie." He explained that only men wear "hoodies," and, although he had previously seen Bell with Fonseca, she typically wore a large wig, so he did not immediately recognize her.

{¶25} Rios provided the following testimony regarding the interaction between Appellant and Fonseca prior to the fatal shooting:

> All I know is [Fonseca] came outside and it was a big argument that started off. And from there, it just led on to "get from in front of my property." And the guy said he wouldn't get from in front of the property like a couple times. And [Fonseca] said, I'm gonna beat you up, and they was supposed to fight. And the guy went to reach for a gun and they just started struggling. Like [Fonseca] rushed him and they started tussling * * * * And he shot several times. And I had took off and ran by the other car. And he looked at me before he got in, but I was ducked by the back of the trunk. I had lifted my head up, but I ducked down at the same time.

(*Id.* at 481.) Rios conceded that he fled after he saw the gun, but before he saw Appellant shoot Fonseca.

{¶26} Rios added, "[Fonseca] came out, he was out on the porch, they had their words, and he was just – come to find out, it was about a female. He told him, well, you can have her, I don't care about her." (*Id.* at 483.) Appellant's counsel objected to Rios' second statement as hearsay, and the objection was sustained by the trial court. However, Rios later testified that he recognized Bell when he realized the argument was about a woman, specifically, "when [Rios] came to think about when they was arguing and he told her, you could have the girl, the female, that how [Rios knew], okay, that had to be [Bell.]" (*Id.* at 503.)

{¶27} Rios testified that Fonseca did not have a gun, but that he was "trying to fight [Appellant] bare hands [sic]." (*Id.* at 485.) He further testified that Appellant refused to leave from the street several times, and "that's when [Fonseca] went to go fight, post up and box with him, and [Appellant] reached for a gun. And that's when [Fonseca] rushed him, like to grab him, and [Appellant] shot him, boom, boom, several times." (*Id.* at 489.)

5

{¶28} At the conclusion of the evidence, Appellant's counsel requested a jury instruction on voluntary manslaughter, based on the testimony that Fonseca engaged in a verbal argument and instigated a fist fight with Appellant. Appellant's counsel argued that the evidence established that "[Appellant] like squares off and [Fonseca] charges him and then that's when [Rios] sees him pull the gun." (*Id.* at 784.) Trial counsel mischaracterized Rios' testimony, as Rios testified that Appellant drew the weapon as Fonseca approached him and Fonseca lurched at Appellant to prevent him from discharging the weapon. The state countered that the social media messages offered at the trial established provocation on the part of Appellant, not Fonseca. (*Id.* at 787-788.)

{¶29} Based on the high-crime area in which the shooting occurred, the trial court confessed its initial inclination to provide the instruction. Nonetheless, the trial court refused to instruct the jury on voluntary manslaughter, stating:

> Here's my problem. That's an instruction I am required to give only if I am satisfied that there is evidence in the record that supports the elements of that offense, in particular [Appellant] being under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim. So for discussion purposes, even if I assume that [Fonseca] * * * charged him, and I assume that constitutes a serious provocation, I still have no evidence in this record that [Appellant] is under the influence of sudden passion or in a sudden fit of rage. And I don't believe I can allow the jury simply to speculate on that portion of the offense.

(*Id.* at 786-787.)

{¶30} The trial court ultimately recognized its "inability to bootstrap the evidence in this case in any fashion that would justify an instruction that's based upon [Appellant] being in a sudden fit of rage or passion under the circumstances. There's just no evidence on that subject." (*Id.* at 788.) The trial court did, however, instruct the jury on the lesser-included offense of murder.

{¶31} On June 8, 2018, the jury returned a guilty verdict on the charge of aggravated murder with the firearm specification. At a sentencing hearing held on August 10, 2018, the trial court found Appellant guilty of having a weapon while under disability. The trial court sentenced Appellant to life without the possibility of parole for the aggravated murder conviction, plus three years for the firearm specification to be served consecutively to the life sentence. The trial court further imposed a sentence of thirty months to be served concurrently for the weapon while under disability conviction.

*State v. Hodges*, 2019-Ohio-5043, ¶¶ 4-31 (7th Dist. Ohio Dec. 6, 2019).

### B.  Direct Appeal

Hodges, through counsel, raised a single issue on direct appeal: "The Trial Court erred when it refused to instruct the jury on voluntary manslaughter when there existed sufficient evidence to instruct the jury for voluntary manslaughter." (ECF No. 12-1, Ex. 47 at PageID #: 371). Hodges also filed multiple pro se documents, including a motion for new appellate counsel and to waive counsel. (*See id.* at Exs. 44, 45, 46, 48, 49, 50). The appellate court denied Hodges's requests. (*See* ECF No. 12-1, PageID #: 391, 423). The state filed a brief on June 11, 2019 and Hodges, through counsel, filed a reply on August 7, 2019. (ECF No. 12-1, Exs. 51, 55). On December 6, 2019, the state appellate court overruled Hodges's assignment of error and affirmed his conviction. *Hodges*, 2019-Ohio-5043, ¶ 50.

### C.  Appeal to the Ohio Supreme Court

On January 15, 2020, Hodges, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 12-1, Ex. 57). In his memo in support of jurisdiction, Hodges raised a single proposition of law:

> If there exists evidence that the accused was under the influence of sudden passion or in a sudden fit of rage, brought on by a serious provocation by the victim, the trial Judge must instruct the jury of voluntary manslaughter and let the jury decide if the accused is guilty of voluntary manslaughter.

(*Id.* at Ex. 58, PageID #: 453). Hodges also filed a pro se notice of appeal. (*Id.* at Ex. 59). In his pro se memorandum in support of jurisdiction, Hodges raised the following propositions of law:

> 1. The trial court erred when it refused to instruct the jury on voluntary manslaughter when there existed sufficient evidence to instruct the jury for manslaughter.

> 2. "Ineffective assistance of appellate counsel" for when the trial court denied the defendant's motion to dismiss on grounds of double jeopardy, and on appeal appellant's counsel failed to raise this issue.

3. "Ineffective assistance of appellate counsel" when counsel chose not to raise the issue that by allowing Noel Rios to testify in the second trial after his testimony was stricken by the court in the first trial was a clear violation of the Defendant's right to due process guaranteed by the 14th Amendment.

4. "Ineffective assistance of appellate counsel" when counsel failed to raise that the trial court was in error for not having multiple side bars put on record at critical point at trial.

5. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court violated the defendant's right to due process guaranteed by the 14th Amendment of the Constitution when it allowed the redundant use of gruesome photos by the state, to sway the jurors and appeal to their emotions.

6. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when it dismissed a black juror without cause due to her race.

7. "ineffective assistance of appellate counsel" when counsel failed to argue that the state committed prosecutorial misconduct when instructing the defense that one of its key witnesses would not be testifying and would be going to a mental hospital.

8. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court committed error when it denied the defendant's Crim. R. 29 motion to dismiss at the rest of the defense's case.

9. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when not allowing the defense to play police call 69 that was made by a witness at the scene introducing another suspect.

10. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court erred when it prohibited the defense from raising reasonable doubt to the jury by not allowing the defense to properly cross a state's witness.

11. "ineffective assistance of appellate counsel" when counsel failed to argue that the state violated the defendant's 14th Amendment right to due process when it allowed perjured, false, fabricated testimony to go uncorrected.

12. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when it allowed non-expert witnesses to testify about internet application without the proper knowledge to do so.

13. Ineffective assistance of appellate counsel" when counsel failed to argue that over objection by the defendant, the trial court improperly allowed the state to impeach its own witness without surprise or affirmative damage shown violating Evid. R. 60.

14. "ineffective assistance of counsel" when counsel failed to argue that the trial court errored in allowing the state to present evidence that was not properly authenticated, no established chain of custody, and no foundation laid.

15. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when over objection allowed the state to mislead the jury during cross examination of Defense witness Niliyah Taylor.

16. "ineffective assistance of appellate counsel" when counsel failed to raise all the instances that trial counsel committed resulting in ineffective assistance of trial counsel.

17. "ineffective assistance of appellate counsel" when counsel failed to argue that the prosecutor errored with remarks that were made during closing arguments that went beyond the record and were not substantiated by the evidence.

18. "ineffective assistance of appellate counsel" when counsel failed to argue that the cumulative error doctrine, in which the existence of multiple errors, which individually may not require a reversal, but violates the defendant's right to a fair trial.

19. "ineffective assistance of appellate counsel" when counsel failed to argue that the jury verdict was against the manifest weight of the evidence.

20. "ineffective assistance of appellate counsel" when counsel failed to argue that the state's evidence was insufficient to support a criminal conviction.

21. "ineffective assistance of appellate counsel" when counsel failed to argue the 7th District court errored when it determined the defendant did not have the right to proceed pro se on direct appeal.

(*Id.* at Ex. 60, PageID #: 485-92). On March 17, 2020, the Ohio Supreme Court declined to accept jurisdiction of Hodges's appeal. (*Id.* at Ex. 61).

### D. Ohio Appellate Rule 26(B) Application to Reopen

On March 6, 2020, Hodges filed a pro se application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 12-1, Ex. 64). Hodges argued his appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1. The trial court erred in denying appellant's motion to dismiss on double jeopardy grounds in violation of said right under the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

2. Failure of Appellant counsel to invoke the appellate procedures of Appellate Rule (9)(C) or (9)(E), Failure to record multiple sidebars at critical points of the trial requires automatic reversal.

3. The Prosecutor misconduct use redundant gruesome photos to appeal to the jury's emotion; Prosecutor misconduct for failure to provide exculpatory evidence specifically supplementary report attached to police call 69 in violation of Brady doctrine; Prosecutor misconduct for misleading the jury in closing arguments.

4. The Ineffective Assistance of trial counsel for failing to investigate and/or interview potential eye witness specifically 911 callers in "police call69"; ineffective Assistance of trial counsel failing to call Albi witness; failing to investigate eyewitness in the neighborhood; failing to object to misleading the jury.

5. Prosecutor misconduct violated the defendants 5th and 14th Amendment rights to due process when it allowed known perjured, coerced, false, and fabricated testimony to go uncorrected.

6. The trial court abused its discretion in not allowing the defense to play Police call 69 that was made by a witness at the scene introducing another suspect in the murder, in doing so violating the defendant's right to due process established by the 5th and 14th Amendments of the United States constitution.

7. The trial court erred in allowing the state to improperly impeach its own witness in violation of Evid. R. 607 and also violating Evid. R. 105 in failing to give a proper impeachment instruction to the jury so that the testimony would be restricted to its proper scope.

8. The trial court erred in allowing the introduction of prejudicial evidence by the State without the establishment of proper foundation or the establishment of a chain of custody.

10 [sic]. "The trial court's denial of appellant's Crim. R. 29 motion for acquittal despite insufficient evidence to sustain the conviction also, the conviction of appellant is against the manifest weight of the evidence such that reversal is required both violating the defendant right to due process 5th and 14th amendments

(*Id.* at PageID #: 516-25). The state filed a response in opposition. (*Id.*, Ex. 65). Hodges replied.

(*Id.*, Ex. 66). On September 24, 2020, the state appellate court denied the application to reopen.

(*Id.*, Ex. 67).

On November 9, 2020, Hodges, through counsel, filed a notice appeal to the Ohio Supreme Court. (*Id.*, Ex. 68). In his memorandum in support of jurisdiction, Hodges raised seven propositions of law:

1. FAILURE OF APPELLATE COUNSEL TO INVOKE THE APPELLATE PROCEDURES OF APPELLATE RULE 9(C) OR 9(E), "FAILURE TO RECORD MULTIPLE SIDEBARS AT CRITICAL POINTS OF THE TRIAL REQUIRES AUTOMATIC REVERSAL"

2. THE PROSECUTOR MISCONDUCT USE REDUNDANT GRUESOME PHOTOS TO APPEAL TO THE JURY'S EMOTION; PROSECUTOR MISCONDUCT FOR FAILURE TO PROVIDE EXCULPATORY EVIDENCE SPECIFICALLY SUPPLEMENTARY REPORT ATTACHED TO POLICE CALL 69 IN VIOLATION OF BRADY DOCTRINE; PROSECUTOR MISCONDUCT FOR MISLEADING THE JURY IN CLOSING ARGUMENTS.

3. THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO INVESTIGATE AND/OR INTERVIEW POTENTIAL EYEWITNESS SPECIFICALLY 911 CALLERS IN "POLICE CALL 69"; INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FAILING TO CALL ALIBI WITNESS; FAILING TO INVESTIGATE EYEWITNESS IN THE NEIGHBORHOOD; FAILING TO OBJECT TO MISLEADING THE JURY.

4. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ALLOWING THE DEFENSE TO PLAY POLICE CALL 69 THAT WAS MADE BY A WITNESS AT THE SCENE INTRODUCING ANOTHER SUSPECT IN THE MURDER, IN DOING SO VIOLATING THE DEFENDANT'S RIGHTS TO DUE PROCESS ESTABLISHED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

5. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO IMPROPERLY IMPEACH ITS OWN WITNESS IN VIOLATION OF EVIDENCE RULE 607 AND ALSO VIOLATING EVIDENCE RULE 105 IN FAILING TO GIVE A PROPER INSTRUCTION TO THE JURY SO THAT THE TESTIMONY WOULD BE RESTRICTED TO ITS PROPER SCOPE.

6. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF PREJUDICIAL EVIDENCE BY THE STATE WITHOUT THE ESTABLISHMENT OF PROPER FOUNDATION OR THE ESTABLISHMENT OF A CHAIN OF CUSTODY.

7. THE TRIAL COURT'S DENIAL OF APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL DESPITE INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION ALSO, THE CONVICTION OF APPELLANT IS

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SUCH THAT REVERSAL IS REQUIRED BOTH VIOLATING THE DEFENDANT'S RIGHT TO DUE PROCESS 5TH AND 14TH AMENDMENTS.

(*Id.* at Ex. 69). On January 22, 2021, the Ohio Supreme Court declined to accept jurisdiction. (*Id.* at Ex. 70).

## III.    Federal Habeas Petition

On January 11, 2022, Hodges filed a 28 U.S.C. § 2254 habeas petition and raised eleven grounds for relief:

Ground One: Ineffective assistance of trial counsel Guaranteed by 6th U.S. constitution Amendment.

Ground Two: The prosecutor committed prosecutorial misconduct on multiple occasions. Without the prosecution misconduct instanus, the result of the trial would have been different. Violating the defendants 5th and 14th right to due process provided by the U.S. Constitution.

Ground Three: Failure of appellate counsel to invoke the appellate procedures of App. R. 9(c) or 9(e), "Failure to record multiple sidebars at critical points of the trial requires automatic reversal" (6th Amd. U.S. Cont. violation).

Ground Four: Trial court abused its discretion in not allowing the defense to play call 69 that was made by a witness at the scene introducing another suspect in the crime in doing so violating defendant's rights to due process, established by the 5th and 14th Amendments of the U.S. Constitution.

Ground Five: The trial court erred in allowing the state to improperly impeach its own witness in violation of Evid. R. 607 and also violating Rule 105 in failing to give a proper instruction to the jury so that the testimony would be restricted to its proper scope. And allowing jury to hear hearsay violating 5th and 14th U.S. Cont. Amendments right to due process.

Ground Six: The trial court erred in allowing the introduction of prejudicial evidence by the state without the establishment of proper foundation or the establishment of a chain of custody. 5th and 14th Amendment of U.S. Cont. violations.

Ground Seven: The trial court's denial of appellant's Criminal Rule 29 Motion for acquittal despite insufficient evidence to sustain the conviction. Also, the conviction of appellant is against the manifest weight of the evidence such that

reversal is required both violating the defendant's 5th and 14th Amendment rights to due process.

Ground Eight: The trial court erred in denying appellant's motion to dismiss on double jeopardy grounds, in violation of said right under the 5th and 14th Amendments of the United States Constitution. When it was shown the defendant was goaded into seeking a mistrial, by the prosecutor when using known fabricated evidence to invite a mistrial.

Ground Nine: The accumulation of errors should warrant a reversal of conviction. Each error viewed as a whole did deprive the defendant of his constitutional right to a fair trial, 5th and 14th U.S. Cont. Amendments.

Ground Ten: Trial court erred in allowing multiple non-expert witnesses to testify in regards to technical internet applications, that they were not qualified to testify about, in doing so depriving the defendant of a fair trial violating his 5th and 14th Amendment rights to due process.

Ground Eleven: The district court of appeals erred in denying the defendant to proceed pro se on direct appeal, violating said rights under the 6th, 5th, 14th Amendments of the United States Constitution.

(ECF No. 1, PageID #: 29-54).

## IV.    Law and Analysis

Respondent argues that Petitioner's grounds are all procedurally defaulted, non-cognizable, and/or meritless.

### A.  Grounds One, Two, and Four through Eleven – Procedurally Defaulted

Respondent argues that all Hodges' grounds for relief are procedurally defaulted because "Hodges alleges these claims were raised in his 26(B) application to reopen his appeal" but such "would only preserve the ineffective appellate counsel claims as opposed to the underlying claims." (ECF No. 12 at 23). Additionally, concerning Ground Eight, Respondent argues that while "Hodges raised the claim in his first direct appeal," he "failed to file an appeal in the Supreme Court of Ohio." (ECF No. 12 at 22).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate

review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

Here, Petitioner raised Ground Eight, which alleges that the trial court erred in denying his motion to dismiss on double jeopardy grounds, in his interlocutory appeal. (*See* ECF No. 12-1, Ex. 28). However, he failed to include this ground in an appeal to the Ohio Supreme Court. To "fairly present" each of his claims, Hodges was required to present each of his issues to the appropriate

courts throughout Ohio's appellate process. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845). Because Hodges did not present this claim to the Ohio Supreme Court, Ground Eight is procedurally defaulted.

As to Grounds One, Two, Four through Seven, and Nine through Eleven, Petitioner did not include these claims in his direct appeal, which only asserted that the trial court erred in not instructing the jury on voluntary manslaughter. (ECF No. 12-1, Ex. 47). Petitioner included many of his claims as reasons that his appellate counsel was ineffective both in his pro se memorandum to the Ohio Supreme Court and his application to reopen. (*Id.* at Exs. 60, 64). However, claims raised for the first time to the Ohio Supreme Court are not properly before the court and are procedurally defaulted. *Eskridge v. Konteh*, 88 F. App'x 831, 837-38 (6th Cir. 2004). And, as Respondent correctly argues, "a Rule 26(B) application preserves only ineffective-assistance of appellate-counsel claims, not the underlying substantive claims." *Somers v. Forshey*, No. 20-3690, 2020 WL 7706399, at *2 (6th Cir. Oct. 1, 2020) (citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012)). Thus, Grounds One, Two, Four through Seven, and Nine through Eleven are procedurally defaulted.

However, Petitioner did fairly present his claim that appellate counsel was ineffective for failing to invoke the appellate procedures regarding sidebars that were not recorded. He included this claim both in his application to reopen and his appeal to the Ohio Supreme Court of the appellate court's denial of reopening. (ECF No. 12-1, Exs. 64, 69). Thus, Ground Three is not procedurally defaulted and will be addressed further below.

Because Grounds One, Two, and Four through Eleven are procedurally defaulted, the question becomes whether Petitioner can overcome the default so that the Court may review the claims on the merits. A court may review a petitioner's procedurally defaulted claims on the merits

15

only if he shows both cause for not raising his claims at all levels of the state courts and prejudice, or that he is actually innocent of the crimes for which he was convicted. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Here, Hodges asserted in his initial petition that his failure to raise Grounds One and Four on direct appeal was due to ineffective assistance of appellate counsel and his failure to raise Grounds Two, Three, Six through Eight, and Ten was because he was not allowed to proceed pro se on appeal. (ECF No. 1, PageID #: 31-54). However, beyond listing these reasons, Hodges did not "clearly articulate the basis of his argument for ineffective assistance of appellate counsel" with respect to these grounds and "[i]t is well-settled that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Taylor v. McKee*, 649 F.3d 446, 452 (6th Cir. 2011) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). Further, even if his initial petition were sufficient to raise ineffective assistance of appellate counsel as cause for his procedural default, Hodges's traverse—filed through counsel—wholly fails to respond to the procedural default argument. (*See generally* ECF No. 20). Because Hodges fails to present any substantive argument concerning cause and prejudice, he has failed to carry his burden of showing such. *See Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) ("Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced."). Nor has he presented any argument that he is actually innocent. Thus, he has not overcome the procedural default.

In accordance with the above discussion, it is recommended that Grounds One, Two, and Four through Eleven be dismissed as procedurally defaulted.[2]

---

[2] Having concluded that these grounds are procedurally defaulted, the Court need not address Respondent's argument that Grounds Four, Five, Six, Ten, Nine, and Eleven are non-cognizable.

### B.  Ground Three – Fails on the Merits

Ground Three asserts that "Failure of appellate counsel to invoke the appellate procedures of App. R. 9(c) or (9)(E) 'Failure to record multiple sidebars at critical points of the trial requires automatic reversal.'" (ECF No. 1, PageID #: 35-36).

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).

Under the contrary to clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the unreasonable application clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applied that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect on awareness of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decisions contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing

district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

In considering an ineffective assistance of appellate counsel claim, a habeas court applies the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Haliym v. Mitchell*, 492 F.3680, 694 (6th Cir. 2007). A petitioner must show: 1) that his appellate counsel's performance was objectively deficient; and 2) prejudice. *Id.* To determine whether there was prejudice, the court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citations omitted). Thus, a claim appellate counsel could have but did not raise cannot form the basis of an ineffective

18

assistance of counsel claim unless the claim had a reasonable probability of success at the time it could have been raised to have changed the result of the appeal. *Id.* at 699-700. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008)).

Additionally, "the combined effect of *Strickland* and § 2254(d) is doubly deferential review. Put differently, 'the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Hughbanks v. Hudson*, 2 F.4th 527, 543 (6th Cir. 2021) (alterations omitted) (quoting *Foust v. Houk*, 655 F.3d 524, 533-34 (6th Cir. 2011)).

In reviewing Petitioner's application for reopening, the state appellate court found Hodges's claim meritless, explaining:

### ASSIGNMENT OF ERROR NO. 2

**FAILURE OF APPELLANT [SIC] COUNSEL TO INVOKE THE APPELLATE PROCEDURES OF APPELLATE RULE (9)(C) OR (9)(E), "FAILURE TO RECORD MULTIPLE SIDEBARS AT CRITICAL POINTS OF THE TRIAL REQUIRES AUTOMATIC REVERSAL" [SIC]**

{¶44} Crim.R. 22 requires the recording of sidebar conferences in serious-offense cases. *State v. Keenan*, 81 Ohio St.3d 133,139,689 N.E.2d 929 (1998). Under the rule, the failure to record sidebar conversations is error. But the requirement "does not mean that the trial record must be perfect for the purposes of appellate review." *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 158, quoting *State v. Palmer*, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997), syllabus. In order to establish error, Appellant must demonstrate the existence of some material prejudice resulting from the failures to record. *Id.* at 555.

{¶45} Appellant challenges his appellate counsel's failure to recreate two sidebars - the first following the dismissal of a prospective African-American juror, and the second conducted while Rios refreshed his recollection by reading his testimony from the first trial. Appellant summarily argues, "Had this been presented on first appeal the result would have been different." (App. at p. 4.)

{¶46} App.R. 9(C)(1), captioned "Statement of the Evidence or Proceedings When No Recording Was Made, When the Transcript of Proceedings Is Unavailable, or When a Recording Was Made But Is No Longer Available for Transcription" reads, in its entirety:

If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App. R. 10 and the appellee may serve on the appellant objections or propose amendments to the statement within ten days after service of the appellant's statement; these time periods may be extended by the court of appeals for good cause. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.

{¶47} App. R 9(D), captioned "Agreed Statement as the Record on Appeal," provides, in pertinent part:

(1) In lieu of the record on appeal as defined in division (A) of this rule, the parties, no later than ten days prior to the time for transmission of the record under App.R. 10, may prepare and sign a statement of the case showing how the issues raised in the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with additions as the trial court may consider necessary to present fully the issues raised in the appeal, shall be approved by the trial court prior to the time for transmission of the record under App.R. 10 and shall then be certified to the court of appeals as the record on appeal and transmitted to the court of appeals by the clerk of the trial court within the time provided by App.R. 10.

{¶48} App.R 9(E) reads, in its entirety:

Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

{¶49} Appellate counsel did not attempt to reconstruct the sidebar conference beyond what the trial court did on the record. However, Appellant has not attempted to reconstruct them, nor does he explain what, if any, prejudice occurred from the trial court's failure to record this sidebar conference. The Ohio Supreme Court has "repeatedly refused to reverse convictions or sentences on the basis of unrecorded conferences when a defendant has not taken these steps." *Ketterer* at ¶ 160, citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 182-84. Accordingly, we find that Appellant's second assignment of error has no reasonable probability of success.

(ECF No. 12-1, Ex. 67 at PageID #: 635-37).

Respondent argues that "[a]s the appellate court reasonably determined, Hodges cannot show that his appellate counsel performed deficiently" or that "but for his appellate counsel's alleged errors, there was a reasonable probability that the result of the proceeding would have been different." (ECF No. 22 at 50-51). Petitioner responds that the appellate court found "that appellate counsel had failed to recreate the . . . side bar conference, but stated the Petitioner erred in failing to recreate them himself as well as failing to explain what prejudice may have occurred from the trial courts failure to record the sidebar conference." (ECF No. 20 at 14). Petitioner argues that he "was prevented from representing himself pro se on appeal" and the fact that the appellate court did not allow him to do so "shows that he attempted to address the side bar issue but was prevented from doing so." (*Id.* at 14-15). Petitioner argues that appellate counsel's failure deprived him of a potential *Batson* claim. (*Id.* at 15). Respondent replies that contrary to Hodges's argument that the appellate court faulted him for not taking action on direct review, "the appellate court faulted Hodges for failing to support his 26(B) application with a reconstructed record of the sidebar, as outside the record evidence is permitted when considering an Ohio App. R. 26(B) application." (ECF No. 21 at 3-4).

The Court agrees with Respondent's understanding of the appellate court's decision. The appellate court did not fault Petitioner for failing to recreate the sidebars on direct appeal when he

was not permitted to proceed pro se, but rather faulted him for failing to recreate them in his application to reopen. Thus, the appellate court concluded that Petitioner failed to show that the result of his appeal would have been different had his appellate counsel followed the procedure to supplement the record.

To the extent Claimant asserts that appellate counsel's failure to supplement the record deprived him of arguing that trial counsel erred in not asserting a *Batson* challenge, such claim is meritless. Contrary to Petitioner's argument that a black juror was dismissed "for what seemed to be no other reason than the fact that she was black" (ECF No. 20 at 14), the portion of the transcript cited shows that the potential juror indicated that she knew the judge and another individual and "the fact that [she] kn[e]w those people" might impact her ability to be fair and impartial. (ECF No. 14, PageID #: 2050). The trial court indicated that she was excused based on those representations. (*Id.* at PageID #: 2051). There is nothing in the record to suggest that the prosecution sought to improperly strike the juror based on race. Therefore, Petitioner cannot show prejudice based on the trial court's excusal of the juror based on her representation that her knowledge of participants in the case might impact her ability to be fair and impartial. Because Petitioner has not shown that the underlying claim had merit, he cannot show that appellate counsel was ineffective for failing to assert the claim.

Accordingly, Ground Three fails on the merits and should be dismissed.

## V.  Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has

made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B. Analysis

Hodges's grounds for relief are procedurally defaulted or meritless. If the Court accepts the foregoing recommendation, then Hodges has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VI. Recommendation

Hodges has presented only procedurally defaulted or meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: May 15, 2024

    *s/Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).