# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KIMANI O. HODGES,                          Case No. 4:22-cv-00119-PAB

                          Petitioner,

    -vs-

                                  JUDGE PAMELA A. BARKER

HAROLD MAY, Warden,

                    Respondent.    **MEMORANDUM OPINION AND ORDER**

Currently pending before the Court is Petitioner Kimani O. Hodges' ("Petitioner" or "Hodges") Motion for New Trial and Order Altering or Amending a Judgment ("Motion for New Trial and Altered Judgment") and Motion to Amend and Make Additional Findings ("Motion to Amend Findings") filed on November 18, 2024.  (Doc. Nos. 32, 33.)  Respondent did not file an opposition to either Motion.  Hodges' Motions follow the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 22), the Court's acceptance of that R&R (Doc. No. 23) denying Hodges' Petition, and the Court's denial of Hodges' subsequent Motion to Re-open Time to Appeal (Doc. No. 25) and Delayed Motion Objecting to the R&R (Doc. No. 27).  On January 24, 2025, after an initial review of Hodges' Motions, the Court ordered Respondent to file a brief addressing Hodges' assertions that his claims are not procedurally defaulted.  (Doc. No. 36.)  Respondent filed his Brief on February 7, 2025.  (Doc. No. 37.)

For the following reasons, Hodges' Motions and request for an evidentiary hearing are DENIED.

## I.      Facts and Procedural History

### A.    Background

The Ohio Court of Appeals for the Seventh Appellate District set forth the following facts and procedural history on Hodges' direct appeal:

{¶4} On February 17, 2016, the body of Jason Fonseca, age nineteen, was found at the bottom of the driveway of his mother's residence at 176 Ayers Street on the east side of Youngstown. Fonseca had been shot nine times.

{¶5} Later that day, Appellant was arrested and charged with aggravated murder in Youngstown Municipal Court. A video initial appearance was held on February 19, 2016. The matter was set for a preliminary hearing on February 26, 2016.

{¶6} On February 25, 2016, Appellant was indicted by the Mahoning County Grand Jury for aggravated murder, and the state dismissed the charge pending in the municipal court. That same day, Angel Bell, who was involved in amorous relationships with both men prior to Fonseca's death, was also indicted for aggravated murder, as well as one count of obstructing justice.

{¶7} The first trial began on January 3, 2017. Fonseca's lifelong friend, Noel Rios, was the only eyewitness to the crime offered by the state. After Appellant's counsel underscored a series of inconsistencies between Rios' direct testimony and his initial police interview, Rios, who was in federal custody at the time, abruptly refused to continue answering questions on cross-examination.

{¶8} After the trial court granted Appellant's motion to strike Rios' testimony in its entirety, the state informed the trial court that it had reached an agreement with Bell. Although Bell had previously maintained that she was not present when the fatal shooting occurred, Bell agreed to provide a proffer to the state that day and to testify against Appellant, in exchange for the dismissal of the charges against her with prejudice.

{¶9} Appellant's counsel moved for a mistrial based on his lack of awareness of the content of Bell's proffer and the potential testimony she would provide at trial. Without objection from the state, the trial court granted the mistrial on January 9, 2017.

{¶10} On January 23, 2017, with leave of court, Appellant filed a motion to dismiss the charges against him on double jeopardy grounds. He argued that the mistrial was the result of prosecutorial misconduct. The trial court overruled the motion on February 3, 2017. On January 30, 2018, we agreed that the prohibition against double jeopardy did not bar Appellant's retrial. *State v. Hodges*, 7th Dist. Mahoning No. 17 MA 0025, 2018-Ohio-447, 105 N.E.3d 543.

{¶11} The second trial began on June 4, 2018. Both Bell and Rios testified on behalf of the state, however Bell's testimony was riddled with "I don't know"s and "I don't remember"s

2

[sic]. Bell testified that she and Fonseca had been romantically involved since 2014. Although problems had developed with their relationship in 2015, Bell declined to characterize the relationship as "on again/off again," but, rather "[always on] for the most part." (Trial Tr., p. 247-248.) At some point, Bell began a romantic relationship with Appellant.

{¶12} Fonseca and Bell purchased a used automobile in January of 2016. According to Fonseca's mother, Fonseca paid for the automobile but did not have a driver's license. Because Bell was involved in an accident two days after Fonseca purchased the automobile, Fonseca hid the car in order to prevent Bell from driving it. Fonseca was not aware at that time that he possessed the only set of keys.

{¶13} Bell and Fonseca broke up at some point thereafter and Fonseca refused to give the keys to the automobile to Bell. In the week leading up to Fonseca's fatal shooting, Bell made a number of failed attempts to retrieve the keys. Fonseca's mother testified that Bell and Appellant stopped at her home on Ayers Street, where Fonseca was residing after the break-up, two days before Fonseca's death, but, per her son's instructions, she did not answer the door.

{¶14} The prior calculation and design element of the aggravated murder charge was established at trial through a series of messages posted to various social media accounts in the five days leading up to Fonseca's death. Copies of the social media messages were not admitted at trial, however, they were made a part of the record through Bell's testimony. Bell, who did not have a phone, communicated with both Fonseca and Appellant via Twitter on a Kindle.

{¶15} Bell testified that, at 9:10 a.m. on the day before Fonseca was murdered, he posted the message "I love you so much" in the Twitter chain with Bell that began on February 13, 2016. (*Id.* at 278.) At 9:16 a.m., Appellant posted, "Love yoself bitch ass nigga she mine now quick in box in n kikn her [sic]." (*Id.* at 278, 282.) Bell explained that Appellant appeared to mean "quit" not "quick" and that "in box in nkikn her" was a reference to Bell's Kik Messenger app.

{¶16} In a 3-second video posted on Bell's Kik Messenger video account, which was admitted into evidence, a man whose face is not visible wields a handgun and states, "We got them dicks [30 bullet clips]. I'll come to yo mama house, fuck boy, (unintelligible)." The man is wearing a large round-faced watch. Bell conceded that Appellant had used her Kik account around the time when the video was posted.

{¶17} Bell testified that she did not recognize the man in the Kik video. The state offered a photograph of Appellant taken on February 18, 2016 at 1:12 a.m. into evidence at the trial. Appellant was wearing a large round-faced watch in the photograph. Bell claimed that she could not determine from the picture whether the man in the video was wearing the same watch. However, Detective Sergeant Rick 4 Spottleson later testified that the watch in the photograph was the same watch worn by the man in the video.

{¶18} Finally, Bell testified that, at 10:51 a.m. on the day that Fonseca was fatally shot, Appellant posted to his own Facebook account, "Niggas want to fight? I'm like naww we toot pipes [shoot guns] you a be fightin for your life." (*Id.* at 274.)

{¶19} According to Bell's testimony, she was in the front passenger seat of Appellant's automobile on February 17, 2016. Appellant, Bell, and another man, who she could not identify, were returning home from visiting friends when Appellant drove down Ayers Street. Appellant recognized the occupant of a vehicle parked near the residence. He stopped his automobile and exited to talk to the occupant. Appellant also conversed with another man who was standing on the street. The man on the street gave Appellant a cigarette.

{¶20} Bell testified that the confrontation between Appellant and Fonseca took place behind the automobile in which she was seated. According to her testimony, "[Fonseca] ran outside and, kind of, I don't know, I guess charged [Appellant]." (*Id.* at 262.) Then Bell heard gunshots and she saw Fonseca fall to the curb. (*Id.* at 263, 269.) Appellant returned to his automobile and then drove to a residence on the south side of Youngstown. Bell testified that she could not recall whether Appellant said anything to her or the other passenger about the shooting while driving across town. (*Id.* at 265.)

{¶21} After he was arrested, Appellant conversed with Bell on the telephone. Bell testified that Appellant "wanted to delete his Facebook." (*Id.* at 272.) Although Bell claimed that she could not recall whether Appellant also asked her to delete his messages on her Twitter account, Bell deleted both the Facebook and Twitter messages.

{¶22} Bell authenticated a letter she received from Appellant while he was incarcerated pending trial, which she read aloud at the trial:

> I'm so so so so sorry. I didn't listen to you when you said – I don't know what that says – forward. I'm sorry. Again, I didn't think shit through and I put your life, as well as my nephew and my brother, in jeopardy. I was just so thirsty to get some money, didn't care where I was or what might or could have happened. Or maybe it wasn't – something – much as to me not caring but just being arrogant and not thinking about what if."

Bell testified that she did not know to what he was referring in the letter. (*Id.* at 292.)

{¶23} Raymond Ortiz, Fonseca's cousin, did not witness the shooting, but was in the residence on Ayers with Fonseca that day. Minutes before the shooting Fonseca tossed his "hoodie" to Ortiz and told him to get dressed and follow Fonseca outside 5 because Appellant was en route to the residence. Fonseca exited the residence, but Ortiz stopped to put on his shoes. As Ortiz approached the door, he heard gunshots. Ortiz testified that his friend, Javaughn used Ortiz's mobile telephone to log into the Kik Messenger app and found the video.

{¶24} Rios testified that he was standing on the sidewalk smoking a cigarette when an automobile stopped in the street. Appellant, who acted as if he knew Rios, stepped out of the

4

automobile and began conversing with him. Rios gave Appellant a cigarette, even though, at the time, he did not recognize him. Rios initially thought that there was another man in the car, because the other occupant was wearing a "hoodie." He explained that only men wear "hoodies," and, although he had previously seen Bell with Fonseca, she typically wore a large wig, so he did not immediately recognize her.

{¶25} Rios provided the following testimony regarding the interaction between Appellant and Fonseca prior to the fatal shooting:

> All I know is [Fonseca] came outside and it was a big argument that started off. And from there, it just led on to "get from in front of my property." And the guy said he wouldn't get from in front of the property like a couple times. And [Fonseca] said, I'm gonna beat you up, and they was supposed to fight. And the guy went to reach for a gun and they just started struggling. Like [Fonseca] rushed him and they started tussling * * * * And he shot several times. And I had took off and ran by the other car. And he looked at me before he got in, but I was ducked by the back of the trunk. I had lifted my head up, but I ducked down at the same time. (*Id.* at 481.)

Rios conceded that he fled after he saw the gun, but before he saw Appellant shoot Fonseca.

{¶26} Rios added, "[Fonseca] came out, he was out on the porch, they had their words, and he was just – come to find out, it was about a female. He told him, well, you can have her, I don't care about her." (*Id.* at 483.) Appellant's counsel objected to Rios' second statement as hearsay, and the objection was sustained by the trial court. However, Rios later testified that he recognized Bell when he realized the argument was about a woman, specifically, "when [Rios] came to think about when they was arguing and he told her, you could have the girl, the female, that how [Rios knew], okay, that had to be [Bell.]" (*Id.* at 503.)

{¶27} Rios testified that Fonseca did not have a gun, but that he was "trying to fight [Appellant] bare hands [sic]." (*Id.* at 485.) He further testified that Appellant refused to leave from the street several times, and "that's when [Fonseca] went to go fight, post up and box with him, and [Appellant] reached for a gun. And that's when [Fonseca] rushed him, like to grab him, and [Appellant] shot him, boom, boom, several times." (*Id.* at 489.)

{¶28} At the conclusion of the evidence, Appellant's counsel requested a jury instruction on voluntary manslaughter, based on the testimony that Fonseca engaged in a verbal argument and instigated a fist fight with Appellant. Appellant's counsel argued that the evidence established that "[Appellant] like squares off and [Fonseca] charges him and then that's when [Rios] sees him pull the gun." (*Id.* at 784.) Trial counsel mischaracterized Rios' testimony, as Rios testified that Appellant drew the weapon as Fonseca approached him and Fonseca lurched at Appellant to prevent him from discharging the weapon. The state countered that the social media messages offered at the trial established provocation on the part of Appellant, not Fonseca. (*Id.* at 787-788.)

{¶29} Based on the high-crime area in which the shooting occurred, the trial court confessed its initial inclination to provide the instruction. Nonetheless, the trial court refused to instruct the jury on voluntary manslaughter, stating:

> Here's my problem. That's an instruction I am required to give only if I am satisfied that there is evidence in the record that supports the elements of that offense, in particular [Appellant] being under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim. So for discussion purposes, even if I assume that [Fonseca] * * * charged him, and I assume that constitutes a serious provocation, I still have no evidence in this record that [Appellant] is under the influence of sudden passion or in a sudden fit of rage. And I don't believe I can allow the jury simply to speculate on that portion of the offense.

(*Id.* at 786-787.)

{¶30} The trial court ultimately recognized its "inability to bootstrap the evidence in this case in any fashion that would justify an instruction that's based upon [Appellant] being in a sudden fit of rage or passion under the circumstances. There's just no evidence on that subject." (*Id.* at 788.) The trial court did, however, instruct the jury on the lesser-included offense of murder.

{¶31} On June 8, 2018, the jury returned a guilty verdict on the charge of aggravated murder with the firearm specification. At a sentencing hearing held on August 10, 2018, the trial court found Appellant guilty of having a weapon while under disability. The trial court sentenced Appellant to life without the possibility of parole for the aggravated murder conviction, plus three years for the firearm specification to be served consecutively to the life sentence. The trial court further imposed a sentence of thirty months to be served concurrently for the weapon while under disability conviction.

*State v. Hodges*, 2019-Ohio-5043, ¶¶ 4-31 (7th Dist. Ohio Dec. 6, 2019).

## B.   Direct Appeal

Following his conviction, Hodges filed various *pro se* documents in the Seventh District Court of Appeals (hereinafter "state intermediate appellate court").  (ECF No. 12-1, Exs. 44–46, 48–50, PageID #356–66, 392–404.)  On January 18, 2019, Hodges filed a *pro se* motion requesting additional transcripts of trial proceedings.  (*Id.*, Ex. 44, PageID #356–58.)  On January 22, 2019, Hodges filed a *pro se* motion for request of additional discovery.  (*Id.*, Ex. 45, PageID #359–63.)

On February 6, 2019, Hodges filed a *pro se* motion to withdraw counsel and for appointment of new counsel.  (*Id.*, Ex. 46, PageID #364–66.)  Hodges asserted that he reached out to counsel

6

multiple times to meet and discuss the preparation of his appellate brief, but that counsel had not reached out to or met with him.  (*Id.*)  Hodges further submitted that he had multiple family members reach out to counsel to obtain copies of transcripts and schedule a lawyer visit, but that those efforts too had negative results.  (*Id.*)  Hodges claimed that his appellate counsel had a "conflict of interest" because of his relationship with Hodges' trial counsel.  (*Id.*)  Specifically, Hodges asserted that he planned to argue ineffective assistance of counsel, which he believed his appellate counsel would not argue due to his relationship with trial counsel, given that appellate counsel had described trial counsel as having done "a good job at trial" and said that Hodges lost at trial "due to his [own] choices not counsels [sic]."  (*Id.*)

On February 14, 2019, Hodges, through counsel, raised a single assignment of error on direct appeal to the state intermediate appellate court: "The Trial Court erred when it refused to instruct the jury on voluntary manslaughter when there existed sufficient evidence to instruct the jury for voluntary manslaughter."  (*Id.*, Ex. 47, PageID #371.)  Appellate counsel's brief did not include any other arguments, including any arguments regarding ineffective assistance of counsel as referenced in Hodges' previous motion to withdraw counsel.  (*Id.*)  On February 20, 2019, the state intermediate appellate court issued a judgment entry denying Hodges' *pro se* motions.  (*Id.* at PageID #391.) Regarding Hodges' motion for new appellate counsel, the state intermediate appellate court determined that Hodges was "represented by competent and experienced defense counsel and has presented no basis for appointing new counsel."  (*Id.*)

On February 27, 2019,[1] Hodges filed a letter to the state intermediate appellate court addressing his issues with appellate counsel, accompanied by a motion to strike appointed counsel's

---

[1] Hodges' letter and accompanying motion are dated February 21, 2019, but were not received by the state intermediate appellate court for filing until February 27, 2019.  The language and context of Hodges' letter and accompanying motion

brief and have new counsel appointed and sworn affidavit.  (*Id.*, Exs. 48–49, PageID #392–400.)  In his letter, Hodges asserted that his appellate counsel filed his appellate brief without consulting or meeting with him to address the assignments of error in the case.  (*Id.*, Ex. 48, PageID #392–93.) Hodges contended that he had multiple assignments of error to address, but that his appellate counsel only addressed one assignment of error—and thus, Hodges felt compelled to strike his counsel's brief. (*Id.*)  Hodges' accompanying motion to strike the brief characterized his appellate counsel's actions as ineffective.  (*Id.*, Ex. 49, PageID #396.)  In his sworn affidavit, Hodges averred that he had one phone call with his appellate counsel during the month of February in which Hodges indicated that his main assignment of error was ineffective assistance of counsel, to which his appellate counsel responded that he "has a relationship with [Hodges'] trial counsel … [a]nd that he is a good attorney." (*Id.*, Ex. 49, PageID #399.)  Hodges construed that statement as his appellate counsel not "feel[ing] comfortable addressing the claims of ineffective assistance of trial counsel."  (*Id.*)

On June 5, 2019, Hodges filed another motion to waive counsel and proceed *pro se*.  (*Id.*, Ex. 50, PageID #401–404.)  Hodges again requested that he be permitted to proceed *pro se*, accompanied by standby counsel if the court deemed necessary, so that the "proper issues that the defendant wishes to raise in this appeal can be raised."  (*Id.*)

On June 21, 2019, the state intermediate appellate court denied Hodges' request to waive counsel and proceed *pro se*.  (*Id.*, Ex. 53, PageID #423.)  The state intermediate appellate court noted that a criminal defendant has neither a "constitutional right to self-representation in the appellate process on direct appeal" nor a "right to a 'hybrid' form of representation."  (*Id.*)  Thus, because Hodges was represented by competent counsel who had already filed a brief, the state intermediate

---

suggest that Hodges mailed those documents to the court for filing prior to having received the state intermediate appellate court's February 20, 2019 judgment entry denying his *pro se* motions.

appellate court denied his request to proceed *pro se*. (*Id.*) On December 6, 2019, the state intermediate appellate court overruled Hodges' sole assignment of error and affirmed his conviction. (*Id.*, Ex. 56, PageID #434–47.)

### C. Appeal to the Ohio Supreme Court

On January 15, 2020, Hodges, through counsel, filed a notice of appeal and accompanying memorandum to the Ohio Supreme Court. (*Id.*, Exs. 57–58, PageID #448–59.) In his memorandum in support of jurisdiction, Hodges' counsel again asserted a single proposition of law: "If there exists evidence that the accused was under the influence of sudden passion or in a sudden fit of rage, brought on by a serious provocation by the victim, the trial Judge must instruct the jury of voluntary manslaughter and let the jury decide if the accused is guilty of voluntary manslaughter." (*Id.*, Ex. 58, PageID #453.)

On January 21, 2020, Hodges also filed a separate *pro se* notice of appeal and memorandum to the Ohio Supreme Court. (*Id.*, Exs. 59–60, PageID #474–94.) Therein, Hodges raised the following propositions of law:

1. The trial court erred when it refused to instruct the jury on voluntary manslaughter when there existed sufficient evidence to instruct the jury for manslaughter.

2. "Ineffective assistance of appellate counsel" for when, the trial court denied the defendant's motion to dismiss on grounds of double jeopardy, and on appeal appellant's counsel failed to raise this issue [sic].

3. "Ineffective assistance of appellate counsel" when counsel chose not to raise the issue that by allowing Noel Rios to testify in the second trial after his testimony was stricken by the court in the first trial was a clear violation of the Defendant's right to due process guaranteed by the 14th amendment [sic].

4. "ineffective assistance of appellate counsel" when counsel failed to raise that the trial court was in error for not having multiple side bars put on record at critical points at trial [sic].

9

5. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court violated the defendants right to due process guaranteed by the 14th amendment of the constitution when it allowed the redundant use of gruesome photos by the state, to sway the jurors and appeal to their emotions [sic].

6. "ineffective assistance of appellate counsel" when counsel failed to argue, the trial court errored when it dismissed a black juror without cause due to her race [sic].

7. "ineffective assistance of appellate counsel" when counsel failed to argue that the state committed prosecutorial misconduct when instructing the defense that one of its key witnesses would not be testifying and would be going to a mental hospital [sic].

8. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court committed error when it denied the defendants Crim. R. 29 motion to dismiss at the rest of the defenses case [sic].

9. "ineffective assistance of appellate counsel" when counsel failed to argue that the trial court errored when not allowing the defense to play police call 69 that was made by a witness at the scene introducing another suspect [sic].

10. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when it prohibited the defense from raising reasonable doubt to the jury by not allowing the defense to properly cross a states witness [sic].

11. "ineffective assistance of appellate counsel" when counsel failed to argue that the state violated the defendants 14th Amendment right to due process when it allowed perjured, false, fabricated testimony to go uncorrected [sic].

12. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when it allowed non-expert witnesses to testify about internet applications without the proper knowledge to do so [sic].

13. "ineffective assistance of appellate counsel" when counsel failed to argue that over objection by the defendant, the trial court improperly allowed the state to impeach its own witness without surprise or affirmative damage shown violating Evid. R. 60[2] [sic].

14. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored in allowing the state to present evidence that was not properly authenticated, no established chain of custody, and no foundation laid [sic].

---

[2] The scanned copy of Hodges' memorandum appears to cut-off slightly on the right side of the document—thus, his memorandum reads "Evid. R. 60" rather than "Evid. R. 607." (Doc. No. 12-1, Ex. 60, PageID #489.)  In light of this apparent scanning issue, and consistent with Hodges' other filings, the Court construes Hodges' memorandum as raising Evid. R. 607 as the basis for this ground.

10

15. "ineffective assistance of appellate counsel" when counsel failed to argue the trial court errored when over objection allowed the state to mislead the jury during cross examination of Defense witness Niliyah Taylor [sic].

16. "ineffective assistance of appellate counsel" when counsel failed to raise all the instances that trial counsel committed resulting in ineffective assistance of trial counsel [sic].

17. "ineffective assistance of appellate counsel" when counsel failed to argue that the prosecutor errored with remarks that were made during closing arguments that went beyond the record and were not substantiated by the evidence [sic].

18. "ineffective assistance of appellate counsel" when counsel failed to argue that the cumulative error doctrine, in which the existence of multiple errors, which individually may not require a reversal, but violates the defendants right to a fair trial [sic].

19. "ineffective assistance of appellate counsel" when counsel failed to argue that the jury verdict was against the manifest weight of the evidence [sic].

20. "ineffective assistance of appellate counsel" when counsel failed to argue that the states evidence was insufficient to support a criminal conviction [sic].

21. "ineffective assistance of appellate counsel" when counsel failed to argue the 7th District court errored when it determined the defendant did not have the right to proceed pro se on direct appeal [sic].

(*Id.*, Ex. 60, PageID #485–92.)  On March 17, 2020, the Ohio Supreme Court declined to accept jurisdiction of Hodges' appeal.  (*Id.*, Ex. 61, PageID #509.)

**D.    Ohio Appellate Rule 26(B) Application to Reopen**

On March 6, 2020, Hodges, acting *pro se*, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B).  (*Id.*, Ex. 64, PageID #514–27.)  Hodges argued that his appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1. "The trial court erred in denying appellant's motion to dismiss on double jeopardy grounds in violation of said right under the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Ohio Constitution."

11

2. Failure of Appellant counsel to invoke the appellate procedures of Appellate Rule (9)(C) or (9)(E), "Failure to record multiple sidebars at critical points of the trial requires automatic reversal [sic]."

3. "The Prosecutor misconduct use redundant gruesome photos to appeal to the jury's emotion"; Prosecutor misconduct for failure to provide exculpatory evidence specifically supplementary report attached to police call 69 in violation of Brady doctrine; Prosecutor misconduct for misleading the jury in closing arguments [sic].

4. The Ineffective Assistance of trial counsel for failing to investigate and/or interview potential eye witness specifically 911 callers in "police call69"; ineffective Assistance of trial counsel failing to call Albi witness; failing to investigate eyewitness in the neighborhood; failing to object to misleading the jury [sic].

5. Prosecutor misconduct violated the defendants 5th and 14th Amendment rights to due process when it allowed known perjured, coerced, false, and fabricated testimony to go uncorrected [sic].

6. "The trial court abused its discretion in not allowing the defense to play Police call 69 that was made by a witness at the scene introducing another suspect in the murder, in doing so violating the defendant's right to due process established by the 5th and 14th Amendments of the United States constitution [sic]."

7. "The trial court erred in allowing the state to improperly impeach its own witness in violation of Evid. R. 607 and also violating Evid. R. 105 in failing to give a proper impeachment instruction to the jury so that the testimony would be restricted to its proper scope [sic]."

8. "The trial court erred in allowing the introduction of prejudicial evidence by the State without the establishment of proper foundation or the establishment of a chain of custody [sic]."

10. [sic][3] "The trial court's denial of appellant's Crim. R. 29 motion for acquittal despite insufficient evidence to sustain the conviction also, the conviction of appellant is against the manifest weight of the evidence such that reversal is required both violating the defendant right to due process 5th and 14th amendments"

(*Id.*, Ex. 61, PageID #516–25.)  The state filed a response in opposition, and Hodges subsequently

replied.  (*Id.*, Exs. 65–66, PageID# 602–22.)  On September 24, 2020, the state intermediate appellate

---

[3] Hodges' 26(B) filing does not contain an "assignment of error number 9"—he instead proceeds to assignment of error "number 10" following assignment of error "number 8."  (*Id.*, Ex. 64, PageID #524–25.)

court denied Hodges' application to reopen, finding that Hodges failed to establish that any of his assignments of error had a reasonable probability of success.  (*Id.*, Ex. 67, PageID #623–50.)

On November 9, 2020, Hodges, through counsel, filed a notice of appeal and accompanying memorandum to the Ohio Supreme Court.  (*Id.*, Ex. 69, PageID #653–73.)  Hodges raised seven propositions of law:

1. FAILURE OF APPELLATE COUNSELTO INVOKE THE APPELLATE PROCEDURES OF APPELLATE RULE 9(C) OR 9(E), "FAILURE TO RECORD MULTIPLE SIDEBARS AT CRITICAL POINTS OF THE TRIAL REQUIRES AUTOMATIC REVERSAL [sic]"

2. THE PROSECUTOR MISCONDUCT USE REDUNDANT GRUESOME PHOTOS TO APPEAL TO THE JURY'S EMOTION; PROSECUTOR MISCONDUCT FOR FAILURE TO PROVIDE EXCULPATORY EVIDENCE SPECIFICALLY SUPPLEMENTARY REPORT ATTACHED TO POLICE CALL 69 IN VIOLATION OF BRADY DOCTRINE; PROSECUTOR MISCONDUCT FOR MISLEADING THE JURY IN CLOSING ARGUMENTS [sic].

3. THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO INVESTIGATE AND/OR INTERVIEW POTENTIAL EYEWITNESS SPECIFICALLY 911 CALLERS IN "POLICE CALL 69"; INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FAILING TO CALL ALIBI WITNESS; FAILING TO INVESTIGATE EYEWITNESS IN THE NEIGHBORHOOD; FAILING TO OBJECT TO MISLEADING THE JURY [sic].

4. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ALLOWING THE DEFENSE TO PLAY POLICE CALL 69 THAT WAS MADE BY A WITNESS AT THE SCENE INTRODUCING ANOTHER SUSPECT IN THE MURDER, IN DOING SO VIOLATING THE DEFENDANT'S RIGHTS TO DUE PROCESS ESTABLISHED BY THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION [sic].

5. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO IMPROPERLY IMPEACH ITS OWN WITNESS IN VIOLATION OF EVIDENCE RULE 607 AND ALSO VIOLATING EVIDENCE RULE 105 IN FAILING TO GIVE A PROPER INSTRUCTION TO THE JURY SO THAT THE TESTIMONY WOULD BE RESTRICTED TO ITS PROPER SCOPE [sic].

6. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF PREJUDICIAL EVIDENCE BY THE STATE WITHOUT THE ESTABLISHMENT OF

13

PROPER FOUNDATION OR THE ESTABLISHMENT OF A CHAIN OF CUSTODY [sic].

7. THE TRIAL COURT'S DENIAL OF APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL DESPITE INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION ALSO, THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SUCH THAT REVERSAL IS REQUIRED BOTH VIOLATING THE DEFENDANT'S RIGHT TO DUE PROCESS 5TH AND 14TH AMENDMENTS [sic].

(*Id.*, Ex. 69, PageID #654–55.) On January 21, 2021, the Ohio Supreme Court declined to accept

jurisdiction. (*Id.*, Ex. 70, PageID #718.)

### D. Federal Habeas Proceedings

On January 11, 2022, Hodges filed a *pro se* Petition for Writ of Habeas Corpus under 28

U.S.C. § 2254 ("Petition") in federal court. (Doc. No. 1.) In his Petition, Hodges raises eleven

grounds for relief:

1. Ground One: Ineffective assistance of trial counsel. Guaranteed by 6th U.S. constitution Amendment [sic].

2. Ground Two: The prosecutor committed prosecutorial misconduct on multiple occasions. Without the prosecutorial misconduct instances, the result of trial would have been different. Violating the defendants 5th and 14th right to due process. Provided by the U.S. Constitution [sic].

3. Ground Three: Failure of appellate counsel to invoke the appellate procedures of App. R. 9(c) or 9(e), "Failure to record multiple sidebars at critical points of the trial requires automatic reversal" (6th Amd. U.S. Cont. violation) [sic].

4. Ground Four: Trial court abused its discretion in not allowing the defense to play call 69 that was made by a witness at the scene introducing another suspect in the crime in doing so violating the defendants rights to due process, established by the 5th And 14th Amendments of the U.S. Constitution [sic].

5. Ground Five: The trial court erred in allowing the state to improperly impeach its own witness in violation of Evid. R. 607 and also violating Rule 105 in failing to give a proper instruction to the jury so that the testimony would be restricted to its proper scope. And allowing jury to hear hearsay violating 5th and 14th U.S. cont. Amendments right to due process [sic].

14

6. Ground Six:  The trial court erred in allowing the introduction of prejudicial evidence by the state without the establishment of proper foundation or the establishment of a chain of custody.  5th and 14th Amendment of U.S. Cont. violations [sic].

7. Ground Seven:  The trial court's denial of appellant's Criminal Rule 29 Motion for acquittal despite insufficient evidence to sustain the conviction.  Also, the conviction of appellant is against the manifest weight of the evidence such that reversal is required both violating the defendants 5th and 14th Amendment rights to due process [sic].

8. Ground Eight:  The trial court erred in denying appellants motion to dismiss on double jeopardy grounds in violation of said right under the 5th and 14th Amendments of the United States Constitution.  When it was shown the defendant was goaded into seeking a mistrial, by the prosecutor when using known fabricated evidence to invite a mistrial [sic].

9. Ground Nine:  The accumulation of errors should warrant a reversal of conviction.  Each error viewed as a whole did deprive the defendant of his constitutional right to a fair trial, 5th and 14th U.S. Cont. Amendments [sic].

10. Ground Ten:  Trial court erred in allowing multiple non-expert witnesses to testify in regards to technical internet applications, that they were not qualified to testify about.  In doing so depriving the defendant of a fair trial violating his 5th and 14th Amendment rights to due process [sic].

11. Ground Eleven:  The district court of appeals erred in denying the defendant to proceed pro se on direct appeal.  Violating said rights under the 6th, 5th, 14th Amendments of the United States Constitution [sic].

(Doc. No. 1, PageID #29–54.)  On June 6, 2022, Respondent filed a Return of Writ accompanied by the state court record.  (Doc. No. 12.)  On October 19, 2022, Hodges, through counsel, filed his Traverse.  (Doc. No. 20.)  On November 3, 2022, Respondent filed a sur-reply to Hodges' Traverse. (Doc. No. 21.)

On May 14, 2024, the Magistrate Judge issued an R&R recommending that Hodges' Petition be denied in its entirety without a certificate of appealability.  (Doc. No. 22.)  Specifically, the Magistrate Judge recommended that Grounds One, Two, and Four through Eleven of Hodges'

15

Petition should be dismissed as procedurally defaulted.[4]  (*Id.* at PageID #3023.)  The Magistrate Judge further recommended dismissal of Ground Three because it failed on the merits.  (*Id.* at PageID #3029.)  Any objections to the R&R were due to be filed on or before May 29, 2024, but none were filed by that date.  (*Id.*)  Accordingly, the Court reviewed the R&R and, finding no clear error, issued a Memorandum Opinion and Order on May 31, 2024 accepting the R&R, denying the Petition, and certifying that an appeal from the decision could not be taken in good faith and no basis existed upon which to issue a certificate of appealability.  (Doc. No. 23.)  Any notice of appeal was due to be filed on or before June 30, 2024.[5]  Nothing was filed during that timeframe.

On August 22, 2024, Hodges filed a Motion to Reopen Time to Appeal & Request for Docket ("Motion to Reopen").  (Doc. No. 25.)  Hodges asserted that he never received the R&R or the Court's May 31, 2024 Order adopting the R&R, and that his counsel of record never communicated with him and failed to file objections on his behalf.  (*Id.* at PageID #3034–35.)  On September 5, 2024, Respondent filed an Opposition to Hodges' Motion to Reopen.  (Doc. No. 26.)  On September 16, 2024, Hodges filed his Delayed Motion Objecting to the Magistrate Judge's R&R ("Delayed Objections"), in which he reiterated his counsel's lack of communication.  (Doc. No. 27.)  Hodges also asserted in his Delayed Objections that his claims were not procedurally defaulted because they were raised in a *pro se* memorandum before the Ohio Supreme Court.  (*Id.*)  On September 30, 2024, Respondent filed an Opposition to Hodges' Delayed Objections.  (Doc. No. 29.)  Additionally, on September 18, 2024, Hodges' counsel of record also filed a Response detailing his reasons for not

---

[4] Because these grounds were found to be procedurally defaulted, the Magistrate Judge did not address Respondent's argument that Hodges' grounds were non-cognizable claims.  (Doc. No. 22 at PageID #3023.)

[5] *See* Fed. R. App. P. 4(a)(1) (providing a 30-day timeline to file a notice of appeal in a civil case).

pursuing objections to the R&R, to which Hodges filed a *pro se* Rebuttal on October 3, 2024.  (Docs. No. 28, 30.)

On October 22, 2024, the Court issued an Order denying Hodges' Motion to Reopen and Delayed Objections.  (Doc. No. 31.)  Regarding Hodges' Motion to Reopen, the Court determined that Hodges did not have a right to assistance of counsel on a habeas appeal.  (*Id.* at PageID #3073.)  Thus, because a habeas petitioner "must bear the risk of attorney error that results in procedural default," the Court rejected Hodges' arguments that his counsel did not notify him of the R&R or file objections or an appeal on his behalf.  (*Id.* at PageID #3073–74.)  For the same reasons, the Court rejected Hodges' Delayed Objections.  (*Id.* at PageID #3076.)  Finally, the Court addressed Respondent's assertions that Hodges' Delayed Objections failed to satisfy the requirements of Fed. R. Civ. P. 60(b).  Although Hodges himself did not raise Rule 60(b) as a basis for his Delayed Objections, the Court nevertheless addressed the rule and determined that relief was not warranted. (*Id.* at PageID #3077–78.)

On November 18, 2024, Hodges filed a Motion for New Trial and Motion for Order Altering or Amending a Judgment ("Motion to Amend Judgment") (Doc. No. 32), as well as a Motion to Amend and Make Additional Findings ("Motion for Additional Findings") (Doc. No. 33), in which he challenges the previous rulings that his claims are procedurally defaulted and requests an evidentiary hearing.  That same day, Hodges filed a Notice of Appeal to the Sixth Circuit Court of Appeals, appealing the Court's adoption of the Magistrate Judge's R&R and denial of his Petition. (Doc. No. 34.)  On December 3, 2024, the Sixth Circuit remarked that Hodges' appeal would be held in abeyance until after this Court ruled on Hodges' pending motions.  (Doc. No. 35.)  Respondent did not file an opposition to either of Hodges' Motions.

On January 24, 2025, this Court ordered Respondent to file a brief addressing Hodges' contentions that his claims are not procedurally defaulted because of the state intermediate appellate court's refusal to allow him to proceed *pro se* on direct appeal and his *pro se* filing to the Ohio Supreme Court thereafter. Respondent filed his Brief on February 7, 2025. Accordingly, Hodges' Motions are ripe for review.

## III. Standard of Review

As a preliminary matter, the Court first turns to the standard of review for evaluating Hodges' Motions. In the caption of his Motion to Amend Judgment, Hodges references Fed. R. Civ. P. 59. (Doc. No. 32 at PageID #3079.) However, in the body of the Motion itself, Hodges cites the standard for Fed. R. Civ. P. 60(b)(6) as the basis for his argument and does not reference Rule 59. (*Id.* at PageID #3080.) As for Hodges' Motion for Additional Findings, Hodges references Fed. R. Civ. P. 52(b). (Doc. No. 33.)

The standard for Rule 52 and Rule 59 motions is the same.[6] *See Brown v. Owens Corning Investment Review Committee*, 2009 WL 1362607, at *1 n. 1 (N.D. Ohio May 13, 2009); *Barber v. Milbank Ins. Co.*, 2023 WL 3721197, at *1 (E.D. Ky. May 30, 2023); *Dolan v. DeJoy*, 2024 WL 4363218, at *1 n.1 (S.D. Ohio Oct. 1, 2024); *McCoy v. Smith*, 2022 WL 10584248, at *1 n.1 (E.D. Mich. Oct. 18, 2022). However, "[t]he standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." *Copeland v. Ohio*, 2007 WL 2177897, at *2 (N.D. Ohio July 27, 2007); *see also Abney v. City of Detroit*, 2024 WL 1451151, at *1 (E.D. Mich. March

---

[6] A motion under either Rule 52 or Rule 59 must be filed no later than 28 days after the entry of the judgment. *See* Rule 52(b); Rule 59(e). The Court issued its Memorandum Opinion and Order denying Hodges' Motion to Reopen and Delayed Objections on October 22, 2024. (Doc. No. 31.) Thus, Hodges' Motions under Rules 52 and 59 would be due no later than November 19, 2024. Because Hodges filed both his Motion to Amend Judgment and Motion for Additional Findings on November 18, 2024, his Motions are timely filed. (Docs. No. 32, 33.)

28, 2024); *Market Finders Ins. Corp. v. Scottsdale Ins. Co.*, 2007 WL 2025210, at *1 n.1 (W.D. Ky. July 9, 2007); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998). Because Hodges is a *pro se* litigant, the Court shall construe his Motions liberally and analyze his claims under the more lenient Rule 59 standard.

A court may grant a motion to amend or alter judgment under Rule 59(e) if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Brumley v. United Parcel Service, Inc.,* 909 F.3d 834, 841 (6th Cir. 2018); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996).[7] *See also Brumley*, 909 F.3d at 841. Motions to alter or amend under this Rule are extraordinary and should be sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.*, 2007 WL 1362457 at * 2 (N.D. Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc*., 904 F.Supp. 644, 669 (N.D. Ohio 1995).

## II. Analysis

### A. Grounds One, Two, and Four through Eleven — Procedural Default

---

[7] *See also Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion."); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.").

The Court first turns to whether Grounds One, Two, and Four through Eleven of Hodges' Petition are procedurally defaulted.

### 1.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).  "The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition."  *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013); *see* 28 U.S.C. § 2254(b), (c).  "A claim may become procedurally defaulted in two ways."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

"First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  As articulated by the Sixth Circuit, "[u]nder the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default."  *Lovins*, 712 F.3d at 296 (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)).

"Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* In other words, "a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule." *Lovins*, 712 F.3d at 295. "A claim is adequately raised on direct appeal if it was 'fairly presented' to the state court." *Williams*, 460 F.3d at 806.

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

It is well established that ineffective assistance of appellate counsel may serve as "cause" for procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, for ineffective assistance of appellate counsel to serve as cause and prejudice to excuse a procedural default, a "petitioner must also show that his claim of ineffective assistance of appellate counsel itself has merit." *Cody v. Sheldon*, 2021 WL 1437557, at *23 (N.D. Ohio Apr. 16, 2021); *see also Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004) (citing *Edwards*, 529 U.S. at 450–51). "[T]he Supreme

Court has held that a defendant generally must present the claim of ineffective assistance of counsel to the state courts as 'an independent claim before it may be used to establish cause for a procedural default.'" *Scuba v. Brigano*, 527 F.3d 479, 487 (6th Cir. 2007) (quoting *Murray*, 477 U.S. at 488–89 (1986)).  If a petitioner fails to properly present the ineffective assistance of counsel claim to the state courts, that claim itself is procedurally defaulted.  *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).  "[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."  *Edwards*, 529 U.S. at 450–51.

## 2.  **Application to Hodges**

In his Return of Writ, Respondent asserted that Hodges failed to properly exhaust his claims before the Ohio courts on direct appeal,[8] and therefore has procedurally defaulted those claims.  (Doc. No. 12 at PageID #186–202.)  Respondent further contended that Hodges has failed to demonstrate cause and prejudice sufficient to excuse his procedural default.  (*Id.*)  In his Traverse, filed through counsel, Hodges did not address the issue of procedural default, and merely noted that any instances of the record not being fully developed should be excused because the state intermediate appellate court refused to allow him to represent himself *pro se*.  (Doc. No. 20, PageID #2999–3000.)  Hodges thus contended that his claims should be viewed "under the lens as being raised on direct appeal instead of through the lens of ineffective assistance of appellate counsel for failing to raise the above-mentioned claims."  (*Id.* at PageID #3000.)  Finally, in his sur-reply, Respondent asserted that

---

[8] With respect to Ground Eight, Respondent conceded that Hodges raised the claim in his initial interlocutory appeal to the state appellate intermediate court, but then asserted that Hodges failed to present the ground to the Ohio Supreme Court.  (Doc. No. 12 at PageID #187.)

Hodges' Traverse reflected no attempt to address the procedural default, and that Hodges' 26(B) application was insufficient to preserve any underlying claims aside from ineffective assistance of appellate counsel.  (Doc. No 21 at PageID #3003.)

The Magistrate Judge, in his R&R, agreed with Respondent that Hodges' claims were procedurally defaulted because they were not properly raised before the Ohio courts.  (Doc. No. 22 at PageID #3020–23.)  Further, the Magistrate Judge determined that Hodges failed to demonstrate cause for his procedural default.  (*Id.* at PageID #3023.)  Although Hodges asserted that the state intermediate appellate court did not permit him to proceed *pro se*, he did "not clearly articulate the basis of his argument" and his Traverse "wholly fails to respond to the procedural default argument." (*Id.*)

In his currently presented Motions, Hodges contends that his claims are not procedurally defaulted and were presented to the state courts.  Upon initially reviewing Hodges' Motions, this Court identified what appeared to be conflicting precedent relating to the procedural default issue. *Compare Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003) *and Cottenham v. Jamrog*, 248 F. App'x. 625 (6th Cir. 2007) (finding no procedural default where appellate counsel denied petitioner the opportunity to raise claims), *with McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), *Hopson v. Gray*, 2019 WL 7757815 (6th Cir. Dec. 27, 2019), *and Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000) (finding claims procedurally defaulted notwithstanding state appellate court's refusal to permit petitioner to appeal *pro se* because there is no constitutional right to self-representation on appeal).  The Court thus ordered Respondent to file a brief addressing the assertion that Hodges' claims are not procedurally defaulted under *Caver* and *Cottenham*.  (Doc. No. 36.)

Respondent, in his Brief addressing the procedural default issue, asserts numerous arguments as to why Hodges' claims fail.  (Doc. No. 37.)  First, Respondent contends that Hodges cannot excuse his procedural default based on the denial of the right to proceed *pro se* on his direct appeal before the state intermediary appellate court because the United States Supreme Court has concluded that "there is no constitutional right of self-representation on direct appeal."  (*Id.* at PageID #3116 (citing *Martinez*, 528 U.S. at 163).)  Respondent asserts that the Sixth Circuit has determined that any conclusion to the contrary would "render meaningless the requirement that a habeas petitioner 'fairly present' his constitutional claims to the state courts."  (*Id.* at PageID #3116 (citing *McMeans*, 228 F.3d at 684).)  Second, Respondent contends that *Caver* is distinguishable because the petitioner was *pro se* before the Michigan Supreme Court, while Hodges was represented by counsel before the Ohio Supreme Court when he submitted his *pro se* filings.  (*Id.* at PageID #3116.)  Third, Respondent submits that *McMeans* and *Martinez* are binding precedent that could not be overturned by *Caver.* (*Id.* at PageID #3117 (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).)  Fourth, Respondent contends that even if hybrid representation was permissible, Hodges' *pro se* memorandum submitted on direct appeal to the Ohio Supreme Court did not fairly present his claims because they did not cite any applicable law or constitutional analysis as required.  (*Id.* at PageID #3117–18.)  Finally, Respondent asserts that any claims of ineffective assistance of counsel cannot serve as cause to excuse procedural default because those claims are meritless.  (*Id.* at PageID #3118.)

The Court agrees with Respondent and hereby finds that Grounds One, Two, and Four through Eleven of Hodges' Petition are procedurally defaulted.  First, it is well-established by the United States Supreme Court that there is no "constitutional right to self-representation on direct appeal from

24

a criminal conviction." *Martinez*, 528 U.S. at 163.  Citing this holding, the Sixth Circuit has explicitly rejected the argument that a "Court of Appeals' decision to strike [a] *pro se* brief constitutes 'cause' to excuse [a petitioner's] procedural default."  *McMeans*, 228 F.3d at 684 (citing *Martinez*, 528 U.S. at 163).

Further, neither *Caver* nor *Cottenham* can overturn *McMeans* because a "published panel decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)) (internal quotation marks omitted); *see also U.S. v. Jarvis*, 999 F.3d 442, 445–46 (6th Cir. 2021); *YAPP USA Automotive Systems, Inc. v. National Labor Relations Board*, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024).  Here, *McMeans* is a published decision that was decided before *Caver* and *Cottenham*, and "[f]orced to choose between conflicting precedents, we must follow the first one."[9]  *Jarvis*, 999 F.3d at 445–46.

This conclusion is supported by recent Sixth Circuit precedent that has adopted the reasoning of *McMeans* and *Martinez* as opposed to that of *Caver* and *Cottenham*.  *See Hopson*, 2019 WL 7757815, at *2 (rejecting argument that procedural default should be excused based on state appellate court's refusal to accept *pro se* brief on direct appeal because "there is no constitutional right of self-representation on appeal"); *Teats v. Genovese*, 2022 WL 22317601, at *5 (6th Cir. Nov. 4, 2022)

---

[9] Even if *McMeans* had not rendered *Caver* inapplicable, the Court would nevertheless find that *Caver* is distinguishable from Hodges' case.  In *Caver*, the petitioner was *pro se* before the Michigan Supreme Court, whereas Hodges was represented by counsel before the Ohio Supreme Court when he submitted his *pro se* filings.  Further, the Court agrees with Respondent that Hodges' *pro se* filing to the Ohio Supreme Court on direct appeal, even if accepted, would still not constitute a fair presentation of his claims because he failed to cite provisions of the "Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns."  *Gooding v. Russell*, 234 F.3d 1268 (Table), at *3 (6th Cir. Oct. 17, 2000) (citing *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993)).

(referencing prior decision in *McMeans* for the proposition that a "petitioner may not rely on a state appellate court's refusal to permit him to file a pro se supplemental brief on direct appeal as cause to excuse a procedural default").

The Court finally notes that Hodges wholly failed to address the issue of procedural default prior to this Court's denial of his Petition.  In his Return of Writ, Respondent advanced a lengthy argument that all but one of Hodges' claims were procedurally defaulted.  (Doc. No. 12 at PageID #182–202.)  Yet in his Traverse, Hodges did not even mention procedural default, let alone attempt to address Respondent's arguments.[10]  (Doc. No. 20.)  Notably, Hodges' Traverse was filed by counsel and is not afforded the same leniency as a *pro se* filing.  At this stage, it is not the function of a Rule 59 motion to raise arguments where "the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue."[11]  *McConocha*, 930 F.Supp. at 1184.

The Court therefore finds that Grounds One, Two, Four through Seven, and Nine through Eleven of Hodges' Petition are procedurally defaulted because he failed to present these claims on direct appeal to the state intermediate appellate court.  (Doc. No. 12-1 at PageID #367–90.)  Ground Eight of Hodges' Petition is also procedurally defaulted because Hodges failed to present the claim to the Ohio Supreme Court following the state intermediate appellate court's rejection of his

---

[10] In his Traverse, Hodges did not properly raise any ineffective assistance of appellate counsel claims for the purpose of rebutting Respondent's assertions that the grounds of his Petition were procedurally defaulted.  However, even if Hodges had done so, the Court would reject that argument because those claims are meritless.  The state intermediate appellate court analyzed Hodges' ineffective assistance of appellate counsel claims through his Rule 26(B) motion and concluded that none of his assignments of error had a reasonable probability of success.  (Doc. No. 12-1 at PageID #623–50.)  Upon review, the Court finds no clear error of law in those conclusions.  Hodges cannot thus rely on those claims as the basis to excuse any procedural default here.  *See Cody*, 2021 WL 1437557, at *23 ("[I]n order for ineffective assistance of appellate counsel to serve as cause and prejudice to excuse a procedural default, a petitioner must also show that his claim of ineffective assistance of appellate counsel has merit.").

[11] *See also supra* note 7.

interlocutory appeal. (*Id.* at PageID #287–97.) Hodges cannot excuse any procedural default on the basis that the state intermediary appellate court denied him the opportunity to file a *pro se* brief after his counsel had already filed a brief on his behalf, and he has failed to demonstrate that he is entitled to relief under Rule 59.

### 3. Actual Innocence

Finally, in his Motions, Hodges asserts that his Petition raises three "actual innocence claims." (Doc. No. 32 at PageID #3082–84; Doc. No. 33 at PageID #3089.) Specifically, Hodges contends that his state appellate counsel was ineffective for failing to: (i) call an alibi witness to the stand; (ii) argue prosecutorial misconduct; and (iii) argue that the trial court erred in now allowing the defense to play "call 69." (Doc. No. 32 at PageID #3082–84.) Hodges further submits that the Sixth Circuit has recognized a circuit split as to whether the "new" evidence standard for asserting a claim of actual innocence includes only newly discovered evidence not available at the time of trial, or whether it broadly encompasses all evidence not presented to the factfinder during trial. (*Id.* at PageID #3084–85 (citing *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012).) Thus, Hodges contends that the Sixth Circuit "has not directly addressed the issue but has suggested that 'newly presented' evidence is sufficient." (*Id.*)

Even if unable to demonstrate cause and prejudice, a habeas petitioner can still "avoid the consequences of a procedural default by demonstrating that review of his claims is needed to prevent a fundamental miscarriage of justice," such as actual innocence. *McClain v. Kelly*, 613 Fed. App'x 422, 428 n.2 (6th Cir. 2015); *see also Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement

where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386 (2004). *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995). This type of actual innocence claim, sometimes called gateway innocence, "does not by itself provide a basis for relief." *Schlup*, 513 U.S. at 315. In other words, the innocence showing is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Thus, a petitioner's showing of a credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal court may address his allegation of constitutional error. *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018).

"But this innocence gateway is a narrow one." *Davis*, 900 F.3d at 326. The Supreme Court has cautioned that it "should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (citation and internal quotation marks omitted). Thus, the exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* at 395 (alteration in original) (citation and internal quotation marks omitted); *see Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

For a petitioner to establish entitlement to the actual innocence exception, he must support his allegations of constitutional error with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial. *Id.*; *see also Davis,* 900 F.3d at 326; *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). Absent new evidence of innocence, "even the existence of a concededly meritorious

28

constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Here, Hodges asserts three "actual innocence claims" and does not present any "newly discovered" reliable evidence to accompany them. However, Hodges does argue that "newly presented" evidence, such as the forensic DNA evidence referenced in his Petition, suffices rather than "newly discovered" evidence. (Doc. No. 32 at PageID #3084–85.) While the Sixth Circuit has suggested that newly presented evidence may be sufficient,[12] Hodges would still be required to show that in light of that evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Jones v. Hunsinger-Stuff*, 2024 WL 758758, at *2 (6th Cir. Jan. 25, 2024). He has failed to satisfy that demanding standard here. Indeed, all three of his "actual innocence" arguments were already raised[13] before the state intermediate appellate court in Hodges' Rule 26(B) application and were rejected as meritless or harmless error, given the "overwhelming proof of [Hodges'] guilt." (Doc. No. 12-1 at PageID #642–43.) Upon review of those determinations, the Court finds no clear error of law and concludes that Hodges has not met the high bar of proving actual innocence by showing "that it is more likely than not that no reasonable juror would have convicted him." *McQuiggin*, 569 U.S. at 395; *see also Jones*, 2024 WL 758758, at *2; *Rizk v. United States*, 2023 WL 5275505, at *3 (6th Cir. Feb. 27, 2023).

---

[12] *See Rizk v. United States*, 2023 WL 5275505, at *3 (6th Cir. Feb. 27, 2023) (suggesting that "newly presented" evidence may be sufficient to satisfy the "new" evidence requirement under *Schlup* but nevertheless finding that such evidence was insufficient to make a showing of actual innocence).

[13] (*Compare* Ground One, Doc. No. 32 at PageID #3082, *with* Doc. No. 12-1 at PageID #641–42; *compare* Ground Two, Doc. No. 32 at PageID #3082–84, *with* Doc. No. 12-1 at PageID #642–43; *compare* Ground Four, Doc. No. 32 at PageID #3084, *with* Doc. No. 12-1 at PageID #64–45.)

Accordingly, the Court concludes that Hodges has failed to satisfy the actual innocence exception to excuse any instances of procedural default as to Grounds One, Two, and Four through Eleven, and is therefore not entitled to relief under Rule 59.

**B.**     **Ground Three — Fails on the Merits**

Finally, the Court turns to Ground Three of Hodges' Petition.  The Magistrate Judge evaluated Ground Three of Hodges' Petition and determined that it failed on the merits.  (Doc. No. 22 at PageID #3024–30.)  Following the deadline for objections and seeing none filed, this Court reviewed the R&R and, finding no clear error, adopted the recommendations of the Magistrate Judge.  (Doc. No. 23.)  Thereafter, Hodges did not challenge the Court's dismissal of Ground Three in his Delayed Objections that were previously rejected by this Court and does not do so now in his Motions presently before the Court.  (Doc. Nos. 27, 32, 33.)  The Court finds no clear error of law regarding its prior decision to dismiss Ground Three and therefore denies relief under Rule 59.

**III.     Conclusion**

For all the foregoing reasons, the Court concludes that Hodges' Motion for New Trial and Order Altering or Amending a Judgment (Doc. No. 32) and Motion to Amend and Make Additional Findings (Doc. No. 33) are without merit.  Accordingly, Hodges' Motions and request for an evidentiary hearing are DENIED.

**IT IS SO ORDERED.**

                                                         _s/Pamela A. Barker_
                                                         PAMELA A. BARKER
Date:  February 11, 2025                                  U. S. DISTRICT JUDGE